UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNETTE LUDDEN,

     Plaintiff,

v.                        CASE No. 8:08-CV-1704-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of

her claim for Social Security disability benefits.[1] Because the decision of the

Commissioner of Social Security is supported by substantial evidence and the

plaintiff has not identified any reversible error, I recommend that the decision

be affirmed.

I.

The plaintiff, who was forty-nine years old at the time her

insured status expired and who has the equivalent of a high school education,

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

has worked as a medical assistant and secretary (Tr. 74, 80, 89, 402). She filed a claim for Social Security disability benefits, alleging that she became disabled due to multiple sclerosis, excess fluid around the brain, diabetes and arthritis (Tr. 73).[2] The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments consisting of a history of multiple sclerosis, history of pseudotumor cerebri with irregular residual headache complaints, obesity, gastroesophageal reflux, diabetes mellitus, arthritis, hypertension and hyperlipidemia (Tr. 21). The law judge concluded that these impairments restricted the plaintiff to performing sedentary work with a sit/stand option in an environment without concentrated exposure to humidity, heat, cold, dust, fumes or gases (Tr. 25). Additionally, the law judge found that the plaintiff could not perform work that required kneeling, crawling, or climbing of ladders, ropes, and scaffolds, and only occasionally required balancing, stooping, crouching or climbing ramps or stairs (id.). Based upon the

---

[2]Multiple sclerosis is a common neurological disease which "causes inflammation of the fatty myelin sheath surrounding the nerve fibers of the central nervous system, leading to formation of scar tissue and resulting impairment of the conduction of neural impulses. Patients suffer a variety of disabilities, ranging from mild to severe." Roscoe N. Gray, Attorneys' Textbook of Medicine, ¶87.00 (3d Ed. 1994).

testimony of a vocational expert, the law judge determined that the plaintiff could return to past work as a secretary (Tr. 28, 426-27). The plaintiff was therefore found not disabled (Tr. 28). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). The plaintiff must also show that she became disabled before her insured status expired on September 30, 2002, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

In 2005, the plaintiff filed an application for disability insurance benefits, alleging that she became disabled in 1998 due to several ailments. The law judge found that the plaintiff had multiple severe impairments that greatly limited her residual functional capacity, but that she was not totally disabled during the insured period. The plaintiff raises four specific issues in challenging the law judge's decision. None warrants reversal.

The overriding factor in assessing the plaintiff's challenges is that she last met the special earnings requirements on September 30, 2002. Further, she alleged in her application that she became disabled on December 1, 1998 (Tr. 74). Consequently, the plaintiff must establish that she became disabled between December 1, 1998, and September 30, 2002.

A. First, the plaintiff argues that the record has not been fully and fairly developed because the law judge "fail[ed] to seek the opinion of a medical expert, or to obtain further medical evaluations" in order to "properly determine the onset of the Claimant's disabling limitations" (Doc. 12, pp. 3-4). The plaintiff bases this argument on the dearth of medical records establishing a disabling condition during the pertinent time period (id.).

The plaintiff does not even identify the purported disabling condition that requires further examination. The plaintiff was warned in the scheduling Order that her memorandum had to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and support those grounds "by citations to the record of the pertinent facts," and that the failure to do so could cause her argument to be disregarded (Doc. 11, p. 2). Therefore, this argument, similar to others made in her memorandum, is properly deemed abandoned for lack of proper development (see Doc. 11). In all events, the contention is meritless.

The law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). However, the burden of proving disability rests primarily with the plaintiff. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. 416.912(c)("You

must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled."). Therefore, the duty to develop a full and fair record merely requires the law judge to develop the plaintiff's medical history for the twelve months preceding the filing of the disability application. Ellison v. Barnhart, supra. The plaintiff does not allege that the law judge failed to do this, as the twelve months preceding her application does not even encompass the insured period.[3]

Moreover, even where there is a duty, a remand is not warranted unless the plaintiff can demonstrate evidentiary gaps in the record which result in "unfairness or clear prejudice." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991). The plaintiff does not reference the applicable Eleventh Circuit law, much less satisfy this standard.

First, the law judge obviously did not think the record was inadequate to make a disability determination. Thus, there were medical records from the insured period from which the law judge was able to

---

[3]Furthermore, the record reflects that the law judge did attempt to develop the medical record by inquiring of the plaintiff's attorney at the administrative hearing if the medical record was complete (Tr. 428). The plaintiff's attorney responded affirmatively, despite his inability to obtain records from a retired physician (id.).

determine that the plaintiff suffered from several severe impairments (see Tr. 21-27). Further, based on the medical documentation, the law judge could determine that the plaintiff's impairments were not disabling. In this respect, the law judge stated that, during the pertinent time period, comprehensive physical examinations performed at hospitals were essentially normal (see Tr. 21, 22). Specifically, a computerized tomography of the plaintiff's head was negative, and the plaintiff's neurological and musculoskeletal functioning were repeatedly found to be normal (see, e.g., Tr. 262, 264, 284, 315, 320). Additionally, the law judge noted that the plaintiff's treating physician's progress notes during the insured period reflected "ailments that would no[t] likely cause ... limitations for a 12-month period[]" (Tr. 27, see also Tr. 22-23).

In sum, this is not a circumstance where there was an absence of medical records; rather, the medical records simply do not support the contention of a disabling condition. Plaintiff's counsel seemingly did not believe there was insufficient evidence to resolve the plaintiff's claim either, since no request for additional medical testing or evaluation was made before, or at, the administrative hearing.

Moreover, even if there were an evidentiary gap, the plaintiff has failed to show that she was prejudiced by it. As discussed above, the pertinent time period for the plaintiff's disability claim is December 1, 1998, until September 30, 2002. The plaintiff has not identified any medical testing or evaluation that can presently be performed from which a physician can reasonably opine about the severity of the plaintiff's conditions as of September 30, 2002. Further, the plaintiff has not specified any aspect of her medical condition during the relevant period that requires the testimony of a medical expert in order for the law judge to understand it. Thus, it is mere speculation that additional medical evaluations or an expert opinion would make any difference to the present application. Accordingly, the plaintiff has failed to show that a remand is warranted to obtain further medical evidence.

B. Next, the plaintiff contends that the law judge "failed to accord substantial weight to the findings and opinions of the Claimant's treating and examining physicians" (Doc. 12, p. 5). The only treating source identified by the plaintiff in this argument is the Valrico Brandon Medical Group, Inc. (id.).

Dr. John A. Rog, from the Valrico Brandon Medical Group, has treated the plaintiff since January 2002 (Tr. 160). On November 8, 2005, Dr.

Rog completed a Multiple Sclerosis Residual Functional Capacity Questionnaire ("Questionnaire"), which opines that the plaintiff has suffered from disabling functional limitations since 1999 (Tr. 160-65).

Thus, Dr. Rog opines in the Questionnaire that the plaintiff can sit, stand and walk for a total of less than two hours in an eight-hour work day, that her legs should be elevated 75% of that time, and that she is likely to be absent from work more than four days per month (Tr. 163, 165). Further, Dr. Rog opined that the plaintiff is incapable of even low stress jobs and he responded affirmatively that her "pain, fatigue, or other symptoms" would frequently interfere with her attention and concentration (Tr. 161-62).[4]

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is

---

[4]On the same date, Dr. Rog also completed a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) (Tr. 167-68), which similarly opines that the plaintiff can sit less than two hours in a workday, stand and walk less than two hours in a workday, and that she would likely be absent from work more than four days per month. This medical opinion is unsupported by any medical findings and does not purport to relate back to the insured period (see id.). Notably, Dr. Rog stated a different length of time that the plaintiff was able to sit at one time than he did on the other form (compare Tr. 162, 167).

conclusory or inconsistent with the physician's own medical records. <u>Lewis</u>
v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

The conclusory nature of the Questionnaire is sufficient in itself
to discount Dr. Rog's opinions. <u>See</u> <u>Crawford</u> v. <u>Commissioner of Social
Security</u>, 363 F.3d 1155, 1159 (11th Cir. 2004)(treating physician's report
"may be discounted when it is not accompanied by objective medical
evidence or is wholly conclusory"). In particular, there is no basis for Dr.
Rog's opinion that these disabling functional limitations existed three years
before he began treating her and six years prior to completing the
Questionnaire.

The law judge noted in the decision her obligation to consider
this opinion evidence (<u>see</u> Tr. 25). Further, the law judge appropriately
considered Dr. Rog's opinions and explained why she was discounting them
as follows (Tr. 27):

> [T]he undersigned gives no great weight to the
> aforementioned opinion at Pages 162-167 of F
> Section, or the earlier treating source assessment
> located at Pages 159-160 of F Section. These
> opinions suggest that the claimant is capable of
> only a significantly reduced range of sedentary
> work, and would more or less be unable to
> sustain/maintain an eight-hour workday, 40-hour
> workweek on a regular and continuous basis. The

opinions are offered by the medical professionals at Valrico Brandon Medical Group, Inc. They are given no great weight though because they are unsupported by the evidence of record. Treating notes from this source only begin as of 2002, and in that year the claimant was commonly at the doctor's office complaining of ailments that would no[t] likely cause these limitations for a 12-month periods [sic] (colds, bouts of shortness of breath, etc.). The opinions appear to be from non-specialists, and are also inconsistent with some of the claimant's activities of daily living noted both before and after the date last insured (caring for grandchildren, reading/writing, driving, etc.).

The law judge stated further (Tr. 24):

While there is a treating source assessment at Pages 162-167 of F Section suggesting that the claimant has had "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous [sic] movement or gait and station," there is absolutely no evidence of this within the medical treatment records. In fact, the records from Valrico Brandon Medical Group, Inc., commonly address other ailments, and not any residual effects from multiple sclerosis (Pages 99-141 of F Section).

This explanation constitutes ample cause for discounting Dr. Rog's opinion

of total disability. See Phillips v. Barnhart, supra, 357 F.3d at 1240.

Furthermore, the law judge's decision is supported by substantial

evidence. Thus, as of the date last insured, the record does not contain any

objective testing or other medical documentation which supports the severe functional limitations opined by Dr. Rog. See id.; Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 740 (11ᵗʰ Cir. 2008) (unpub. dec.)(lack of supporting medical records may be considered in rejecting the treating physician's opinion). In fact, the plaintiff's multiple sclerosis, which is purportedly the basis for Dr. Rog's opinions of disability since 1999 (see Tr. 160), is rarely mentioned in the plaintiff's medical records from the pertinent time period. Moreover, the record contains no objective testing from this period which even confirms this diagnosis.[5]

Rather, as the law judge discusses in the decision (Tr. 22-27), the medical records during the insured period show that the plaintiff was seen by physicians for non-disabling ailments, and that several physical examinations showed that the plaintiff's major systems were essentially normal. Further, the law judge correctly noted that Dr. Rog's opinions are inconsistent with some of the plaintiff's daily activities (Tr. 27). See Tillman v. Barnhart, 144 Fed. Appx. 836, 840 (11ᵗʰ Cir. 2005)(law judge may consider claimant's daily activities in rejecting treating physician's opinion).

---

[5]Significantly, as of May 20, 2002, the plaintiff was not even sure she suffered from multiple sclerosis. Thus, when stating her past medical history during a hospital visit to Lakeland Regional Medical Center, she stated that there is "possible multiple sclerosis" but that "she is not really sure about this" (Tr. 315).

The plaintiff baselessly argues that the law judge erred in rejecting her treating physician's opinions because "[i]n reviewing all of the medical evidence of record, there is, in fact, no medical evidence inconsistent with the medical findings and limitations stated by Valrico Brandon Medical Group, Inc." (Doc. 12, p. 5). However, as indicated, there are many records which are inconsistent with Dr. Rog's assessment of total disability (see, e.g., Tr. 193, 222, 262, 264, 313, 315, 320). In particular, Dr. Rog's opinions are inconsistent with some of his own treatment notes and examination findings. See, e.g., Tr. 193 (all major systems were normal); Tr. 222 (plaintiff's systems were negative for problems).

The plaintiff argues further that Dr. Rog's opinions must be accepted because the "medical evidence does not conclusively counter [his opinions], and no other good cause is presented" (Doc. 12, pp. 5, 6). The plaintiff has failed to support this contention with citations to evidence in the record, in contravention of the scheduling Order (Doc. 11). Furthermore, as previously pointed out, under the substantial evidence standard, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative

findings." Adefemi v. Ashcroft, supra, 386 F.3d at 1027. Especially since the plaintiff has cited no record evidence on this point, she has obviously failed to carry her burden to show that the evidence compels a conclusion that the law judge's assessment of Dr. Rog's opinion is incorrect.[6]

C. The plaintiff argues further in a conclusory manner that the law judge "failed to consider the combined effect of all impairments" (Doc. 12, pp. 6-7). This argument is properly rejected for insufficient development (see Doc. 11).

As the Commissioner notes, the argument merely consists of two general paragraphs (Doc. 15, p. 8). The plaintiff has not even identified the combination of impairments that renders her disabled, much less provided record support for her contention that, considering "the combined effects of the Claimant's impairments, a trier of facts could not possibly find that the Claimant was not disabled" (Doc. 12, p. 7). Therefore, in accordance with the

---

[6]The plaintiff argues further in a conclusory manner that the law judge improperly "play[ed] doctor and ma[d]e [her] own independent medical findings"(Doc. 12, p. 6). This argument is meritless. The law judge's finding that the plaintiff was not disabled is supported by medical records, and, in accordance with Social Security Ruling 96-5p, 1996 WL 374183 at **2, 5 (S.S.A.), the law judge determined the claimant's residual functional capacity. This Social Security Ruling expressly states that the law judge is not to blindly adopt the treating physician's opinions as the claimant's residual functional capacity. See id. at *5 ("[a] medical source statement must not be equated with the administrative finding known as the RFC assessment").

scheduling Order (Doc. 11, p. 2), it is appropriate to deem abandoned this argument which is unsupported by citations to the record or the controlling governing legal standards. In any event, the contention is meritless.

A law judge must not only consider every impairment, but must consider the combined effect of the impairments. Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985). The law judge recognized that she had to consider the combined effects of the plaintiff's impairments, stating that, in making the disability determination, she had to consider "whether the plaintiff ha[d] a medically determinable impairment that is 'severe' or a combination of impairments that is severe" and that she "must consider all of the claimant's impairments" in determining the plaintiff's residual functional capacity" (Tr. 20). The law judge also cited to the pertinent regulations and Social Security Rulings (Tr. 19, 20). These statements demonstrate that the law judge properly considered the combined effects of the plaintiff's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

Further, the law judge's finding that the plaintiff has several severe impairments that greatly limit her residual functional capacity to a limited range of sedentary work (Tr. 21, 25) clearly shows that she considered the impairments in combination. Moreover, the law judge expressly assessed

the plaintiff's multiple impairments. Thus, as indicated above, the law judge discussed the plaintiff's multiple sclerosis, pseudotumor cerebri, diabetes, arthritis, cardiac ailments, mental impairments, and headaches, and then explained why she found that they were not disabling (see Tr. 22-24, 26-27).

The plaintiff did not identify any impairment that was not properly evaluated, either singularly or in combination, and none is apparent. The plaintiff therefore has failed to show that the law judge did not consider the combined effect of the plaintiff's impairments.

The only other contention made by the plaintiff in this regard is that the law judge "did not make an explicit comparison as to how the Claimant's impairments interact with each other" (Doc. 12, p. 7). Exactly what this alleged deficiency consists of is unclear. The plaintiff certainly made no attempt to explain what alleged interactions the law judge failed to compare, much less to demonstrate by citation to the record that some such analysis would affect the law judge's determination of the plaintiff's residual functional capacity. Therefore, the plaintiff's conclusory contention that the law judge did not evaluate her impairments in combination is meritless.

D. The plaintiff argues finally that the law judge "erroneously found [her] testimony less credible based upon [her] ability to perform daily activities" (id.). This argument also fails.

At the hearing, the plaintiff testified that she is unable to work because she can stand for only twenty to thirty minutes and her balance is "pretty bad" (Tr. 404, 406, 416). She also stated that she suffers from depression, fatigue, and forgetfulness (Tr. 406). On a typical day, she naps from two to four hours and, on her bad days, which occur four or five days per month, she stays in bed for six hours (Tr. 411-13).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's

testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge cited Landry and referred to the pertinent regulation and Social Security Rulings governing the assessment of subjective complaints (Tr. 25). This demonstrates that she appropriately applied the governing standards. See Wilson v. Barnhart, supra, 284 F.3d at 1225-26.

Further, the law judge acknowledged the plaintiff's testimony in her decision, as well as the plaintiff's prior statements of "moderate to severe" pain, but did not find these statements fully credible (Tr. 26). The law judge considered several factors which, taken together, support the credibility determination. Thus, the law judge stated (Tr. 26-27):

> In terms of the claimant's alleged universal pain and an almost incomplete ability to stand and walk for the time needed in performing a full time job, the undersigned notes that there is little in the way of regular, consistent medical treatment until 2002 (the year the claimant's insured status expired). The claimant never saw a neurologist for her multiple sclerosis, and neurological findings both before and after the date last insured always returned normal. The 2002 records from the Valrico Brandon Medical Group, Inc., paid little regard to this history of multiple sclerosis. Instead, they tended to focus on other ailments—diabetes mellitus, arthritis, hypertension, and hyperlipidemia. To reiterate, there was no evidence

-19-

of retinopathy, neuropathy, or ketoacidosis
secondary to the claimant's diabetes. No abnormal
laboratory values confirmed the diagnosis of
arthritis, and the claimant was also not referred to
a rheumatologist for treatment. Finally, with regard
to the cardiac ailments, there was no evidence of a
greater cardiac ailment. In fact, tests performed
before and after September 30, 2002[,] suggested
otherwise.

The law judge stated further that, with regard to the plaintiff's headaches, the

reports were infrequent at best (Tr. 27). Finally, the law judge explained that

she discounted the plaintiff's testimony of severe depression because there

was a lack of medical records for this condition; the plaintiff failed to seek

treatment from a mental health professional; her medications were reportedly

of great benefit[7]; and her daily activities were inconsistent with such a finding

(id.; see also Tr. 24-25). The law judge also expressed concern that the

testimony at the hearing was primarily reflective of the plaintiff's current

condition, instead of her limitations during the insured period (Tr. 26). This

explanation is sufficient to discount the plaintiff's testimony of disabling

impairments.   See Heppell-Libsansky v. Commissioner of Social Security,

170 Fed. Appx. 693, 699 (11th Cir. 2006) (unpub. dec.).

---

[7]The plaintiff stated to a Social Security representative in 2002 that she experienced
some depression, but that the medication relieved it (Tr. 92).

Further, this explanation shows that the premise of the plaintiff's argument–that the law judge discounted the plaintiff's credibility based on her daily activities–is incorrect (Doc. 12, pp. 7-8). Thus, as discussed, the factor of the plaintiff's daily activities was only one of several factors discussed by the law judge in determining that the plaintiff's testimony was not fully credible. It was the lack of corroborating medical evidence that played a substantial role in discounting the plaintiff's credibility.

Moreover, contrary to the plaintiff's argument (id., p. 8), it is not impermissible for the law judge to consider the plaintiff's daily activities, along with the other evidence in the record, in determining credibility. See Macia v. Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed. Appx. 853, 856 (11th Cir. 2008)(unpub. dec.). Indeed, the regulations direct that a plaintiff's daily activities are to be considered with respect to the credibility of the reported symptoms. See 20 C.F.R. 404.1529(a). In this regard, the plaintiff stated that she drives, shops, talks on the telephone, watches television, does some household chores, and participates in the care of young children (Tr. 124-25, 407-09). The law judge properly considered her activities.

Finally, it is noted that the law judge did not wholly discount the plaintiff's subjective complaints. To the contrary, she greatly restricted the plaintiff to sedentary work with a sit/stand option and with limited movement.

In sum, the plaintiff has failed to set forth a meritorious basis for challenging the law judge's credibility determination. That determination is supported by substantial evidence, and the plaintiff has not identified any evidence which compels a contrary conclusion. Accordingly, this court is not authorized to overturn the credibility finding. Arnold v. Heckler, 732 F.2d 881, 883-84 (11th Cir. 1984).

IV.

For the foregoing reasons, I recommend that the decision of the Commissioner be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER 27, 2009

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its

-22-

service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).